# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APEX FINANCIAL OPTIONS, LLC and GOPHER FINANCIAL, LLC </br></br> Plaintiffs, </br></br> v. </br></br> RYAN GILBERTSON, *et al.*, </br></br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) </br> Misc. Matter No. 21-023-LPS-SRF |

## MEMORANDUM ORDER

At Wilmington this 15th day of March, 2021, the court having considered the parties' submissions[1] regarding defendants' Ryan Gilbertson ("Gilbertson"), RRG Family Capital LLC ("RRG"), Ryan Gilbertson Family 2012 Irrevocable Trust (the "Trust"), and Total Depth Foundation, Inc. ("Total Depth") (collectively, "Defendants") motion to quash the third-party subpoena[2] that was issued by the United States District Court for the District of Delaware and was served on University Financial Corp., GBC d/b/a Sunrise Banks ("Sunrise Banks") (21-023-LPS-SRF, D.I. 1), IT IS HEREBY ORDERED that Defendants' motion is GRANTED WITHOUT PREJUDICE for the reasons set forth below.

---

[1] Unless otherwise noted, all citations to docket entries refer to the docket in the underlying Civil Action No. 19-046-LPS-SRF. The court has considered the briefing of the instant motion submitted in the District of Minnesota in Miscellaneous Matter No. 20-084-NEB-TNL, which is now Miscellaneous Matter No. 21-023-LPS-SRF before this court. The briefing for the pending motion is as follows: Defendants' memorandum in support of their motion to quash (21-023-LPS-SRF, D.I. 3), and Plaintiffs' memorandum in opposition thereto (21-023-LPS-SRF, D.I. 15). The court has considered the parties' letter briefs in the underlying Civil Action No. 19-046-LPS-SRF and the oral argument on March 11, 2021. (D.I. 100; D.I. 102)

[2] A copy of the subpoena that Plaintiffs served on Sunrise Banks is attached to the declaration of Amy S. Conners, Defendants' counsel. (21-023-LPS-SRF, D.I. 4, Ex. B)

1. **Background.** In July 2018, Gilbertson approached Peter Hajas ("Hajas"), the sole member of both APEX Financial Options, LLC ("APEX") and Gopher Financial, LLC ("Gopher") (collectively, "Plaintiffs"), to determine whether Hajas would consider purchasing Defendants' shares (the "Purchased Equity") of various entities[3] who controlled Northern Industrial Sands, LLC ("NIS"), "a company that mines, processes, and delivers . . . frac sand." (D.I. 3 at ¶¶ 2, 4–5, 30–31)  On October 17, 2018, Plaintiffs acquired the Purchased Equity through a sale agreement (the "Equity Purchase Agreement").  (*Id.* at ¶¶ 7, 39–40)

2. **Procedural History.**  On January 8, 2019, Plaintiffs initiated the underlying civil action, C.A. No. 19-046-LPS-SRF, alleging, *inter alia*, breach of contract and fraud, stemming from the Equity Purchase Agreement and the negotiations that led to its execution.  (D.I. 1; D.I. 3[4])

3. Plaintiffs allege that Defendants made "a series of material misrepresentations" during the negotiations designed to "entice" Plaintiffs into buying the Purchased Equity at a "grossly inflated price."  (D.I. 3 at ¶¶ 6–7)

4. For example, Plaintiffs allege that Defendants failed to disclose a contract between the Purchased Equity and Chetek Express, a trucking company owned by Gilbertson's cousin, which decreased the value of the Purchased Equity by subjecting it to excessive costs.  (*Id.* at ¶ 49)

---

[3] These entities are:  Northern Capital Partners I, LP; Northern Capital Partners I, GP, LLC, Northern Capital Group LLC, NI Sand Holding, LLC, and NIS Investment Holding, LLC.  (D.I. 3 at ¶ 4)  The court refers to the shares of these entities collectively as the "Purchased Equity." (*See id.*)

[4] On April 8, 2019, Plaintiffs filed a first amended complaint (the "amended complaint"), which is the currently operative complaint.  (D.I. 3)  However, Defendants' motion for partial judgment on the pleadings and Plaintiffs' motion for leave to file a second amended complaint remain pending before the court.  (D.I. 58; D.I. 85)

**5.** On September 23, 2020, the parties invoked this court's discovery dispute resolution procedures to resolve Plaintiffs' motion to compel on two issues: whether Defendants were required to produce (1) "financial information in connection with Plaintiffs' claims for breach of contract, fraud and punitive damages" and (2) "organizational information sufficient to show structure, control and ownership of the three corporate Defendants." (D.I. 48 at 1)

**6.** On October 20, 2020, the court heard oral argument and granted Plaintiffs' motion to compel only for the production of documents related to Defendants' organizational structures. (10/20/2020 Tr. at 48:14–53:13) However, in denying the balance of Plaintiffs' requests, the court instructed that, within one week, Plaintiffs could serve revised requests, more narrowly tailored to the relevant issues of the case, *i.e.*, "misrepresented disclosures" and "concealment of off-record, off-market contracts," allegations of which are in the amended complaint. (*Id.* at 49:5–9)

**7.** On October 27, 2020, Plaintiffs served a "Third Set of Requests for Production" on Defendants seeking, *inter alia*, Defendants' "net worth statements provided to banks." (D.I. 100 at 2; D.I. 77; *see also* 21-023-LPS-SRF, D.I. 16, Ex. 6 at 24) On November 10, 2020, Defendants served their objections to Plaintiffs' requests based on relevance and proportionality grounds and asserted that they did not possess responsive documents. (21-023-LPS-SRF, D.I. 4 at ¶ 9; D.I. 16, Ex. 6 at 24)

**8.** On December 8, 2020, Plaintiffs served a third-party subpoena on Sunrise Banks seeking:

> All Documents and Communications reflecting or showing the assets for the Defendants, including all personal financial statements, tax returns, and or other financial statements. This Request shall include all e-mails and other Communications sent to or by Barb Nieland, David Scott, and other of Your agents and employees relating to Defendants' assets.

(21-023-LPS-SRF, D.I. 4, Ex. B at iii)

9. On December 17, 2020, Defendants filed a motion to quash Plaintiffs' subpoena in the United States District Court for the District of Minnesota. (21-023-LPS-SRF, D.I. 1)

10. On January 19, 2021, the District of Minnesota ordered that the motion to quash be transferred to this court. (21-023-LPS-SRF, D.I. 19; 01/19/21 Tr. at 23:22–40:15) The matter was subsequently transferred to this court on January 25, 2021, and was referred to the undersigned judicial officer on February 8, 2021. (21-023-LPS-SRF, D.I. 20; D.I. 25)

11. On February 26, 2021, the parties requested oral argument regarding the motion to quash and on Plaintiffs' motion to compel discovery to resolve two discovery issues: (1) Plaintiffs' renewed request for documents related to Defendants' organizational structures, and (2) Plaintiffs' request for net worth financial information that Gilbertson provided to the United States government for the purposes of assessing restitution as part of his sentencing in a criminal matter.[5] (D.I. 98; D.I. 100 at 4)

12. The court held a hearing on March 11, 2021. (*See generally* 03/11/21 Tr.; D.I. 104) For the second time, the court ordered Defendants to produce all documents in their possession, custody, or control related to organizational structures and permitted Plaintiffs to serve a corresponding interrogatory to obtain Defendants' verified response under oath as required by Fed. R. Civ. P. 33. (03/11/21 Tr. at 14:3–25, 36:5–37:16) However, the court denied Plaintiffs' motion to compel Gilbertson's financial information in his criminal case because the request was overly broad in scope and "untethered to the allegations" in the amended complaint. (*Id.* at 19:19–21:13)

---

[5] *United States v. Gilbertson*, No. 17-cr-00066 (D. Minn.).

13. **Legal Standard.**  In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Likewise, "[d]iscovery sought via a subpoena issued pursuant to Rule 45 must fall within the scope of discovery permissible under Rule 26(b)."  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Becton, Dickinson & Co.*, 2018 WL 627378, at *4 (D.N.J. Jan. 30, 2018) (internal citations omitted).  "The district court has discretion whether to quash or modify a subpoena."  *Shahin v. Delaware Fed. Credit Union*, C.A. No. 10-475-LPS, 2012 WL 3870327, at *2 (D. Del. Sept. 5, 2012) (citing *Wedgewood Vill. Pharmacy, Inc. v. United States*, 421 F.3d 263, 268 n. 5 (3d Cir. 2005); *Connaught Laboratories, Inc. v. SmithKline Beecham P.L.C.*, 7 F.Supp.2d 477, 480 (D. Del. 1998)).

14. **Analysis.**  As a preliminary matter, Plaintiffs served a subpoena on a non-party financial institution, Sunrise Banks.[6]  (21-023-LPS-SRF, D.I. 4, Ex. B)  It is undisputed that Defendants have standing to move to quash it.  (21-023-LPS-SRF, D.I. 15; 01/19/21 Tr. at 33:9–12).  *See Ace Hardware Corp. v. Celebration Ace Hardware, LLC*, C.A. No. 09-109-SLR, 2009 WL 3242561, at *2 (D. Del. Oct. 8, 2009) ("Personal rights claimed with respect to bank account records give a party sufficient standing to challenge third-party subpoenas served upon financial institutions holding such information."); *see also* Fed. R. Civ. P. 45(d)(3)(A)(iii).

15. Defendants argue that Plaintiffs' attempt to obtain records from Sunrise Banks is an "end-run around" or a circumvention of this court's October 20th discovery ruling.  (21-023-LPS-SRF, D.I. 3 at 4, 7; 01/19/21 Tr. at 7:15–8:6)  Defendants also argue this court's October 20th ruling concluded that broad discovery into Defendants' financial information was "irrelevant." (21-023-LPS-SRF, D.I. 3 at 5)

---

[6] Sunrise Banks has not objected to the subpoena.

16. The court disagrees with Defendants' characterizations of Plaintiffs' litigation strategy and this court's October 20th discovery ruling. In response to Plaintiffs' request for a "statement" of Defendants' net worth or a "listing" of Defendants' assets, Defendants stated that they did not possess any responsive documents. (*See* 21-023-LPS-SRF, D.I. 16, Ex. 6 at 24) Accordingly, there is nothing improper procedurally about Plaintiffs' pursuit of the information at issue via third-party subpoena instead of moving to compel the production of documents that Defendants asserted were not in their possession.

17. Moreover, the court did not reach a blanket conclusion that Defendants' financial information was "irrelevant." (*See* 10/20/2020 Tr. at 48:14–53:13) Rather, the court found that Plaintiffs' prior requests were general and overbroad. (*See id.*) Thus, they failed to satisfy the relevance and proportionality requirement of Fed. R. Civ. P. 26(b)(1), so the court permitted Plaintiffs to serve revised requests narrowed to the allegations in the amended complaint. (*Id.*)

18. Defendants' primary argument in moving to quash the subpoena is that the information sought is not relevant and, therefore, outside the scope of discovery. (21-023-LPS-SRF, 01/19/21 Tr. at 10:12–13) In response, Plaintiffs argue that the information they seek is relevant to Defendants' liability for breach of contract and fraud and Plaintiffs' claim for punitive damages. (*Id.* at 11:9–11)

19. The amended complaint alleges that Defendants "failed to disclose numerous long-term contracts" and that Plaintiffs entered into the Equity Purchase Agreement in reliance on Defendants' misrepresentations regarding such contracts. (D.I. 3 at ¶¶ 6–7) The amended complaint cites Defendants' failure to disclose the existence of several contracts, including the Chetek Express contract, as examples of Defendants' material misrepresentations that led to an inflated evaluation of the Purchased Equity. (*Id.* at ¶ 49)

20. Plaintiffs assert that through other third-party discovery they have discovered that Gilbertson founded Chetek Express and owned shares of it at the time the parties executed the Equity Purchase Agreement. (21-023-LPS-SRF, D.I. 15 at 5, 15; D.I. 16 at ¶ 11) Plaintiffs have also identified seven other agreements that, like the Chetek Express contract, were undisclosed in the transaction and may have devalued the Purchased Equity or profited Defendants.[7] (21-023-LPS-SRF, D.I. 15 at 14)

21. Plaintiffs argue their subpoena to Sunrise Banks[8] seeks to uncover Defendants' financial information to determine whether Defendants may have had a self-interest in other "undisclosed and/or off-market agreements" with NIS. (21-023-LPS-SRF, D.I. 15 at 2, 14) Plaintiffs also note that they seek such financial information to determine whether relationships exist between Defendants and other third parties that are "detrimental" to NIS. (*Id.* at 16) At oral argument, Plaintiffs' counsel argued that the subpoena "is a fairly narrow request for personal financial statements that Mr. Gilbertson provided to Sunrise Bank[s]." (03/11/21 Tr. at 21:20–22)

---

[7] Plaintiffs include allegations of these seven agreements in their proposed second amended complaint. (D.I. 85, Ex. 1 at ¶ 44) Plaintiffs' motion for leave to file a second amended complaint is currently pending. (D.I. 85)

[8] In their opposition to Defendants' motion to quash, Plaintiffs assert that "at least some Defendants have a relationship with . . . Sunrise Bank[s]." (21-023-LPS-SRF, D.I. 15 at 2) At oral argument, Plaintiffs' counsel asserted that he had reviewed an email exchange between Gilbertson and two Sunrise Bank employees in which the Sunrise Bank employees reminded Gilbertson to submit a "personal financing statement" with a section for Gilbertson to make a "disclosure of assets" that would include his "ownership of certain entities." (03/11/21 Tr. at 26:2–28:13) Defendants' counsel argued that the aforementioned email relates to a "commercial lease" on an "apartment building" having nothing to do with this litigation. (*Id.* at 31:9–33:9) The parties did not direct the court to the email they referenced at oral argument or in their letter briefing. (*See* D.I. 100; D.I. 102; 03/11/21 Tr.) Regardless, the existence of such an email does not change the broadly worded express language of the subpoena at issue. (*See* 21-023-LPS-SRF, D.I. 4, Ex. B; D.I. 16, Ex. 10)

22.  However, Plaintiffs' argument fails because it does not align with the actual language of the subpoena.  The subpoena seeks "[a]ll Documents and Communications reflecting or showing the assets for the Defendants, including all personal financial statements, tax returns, and or other financial statements."  (21-023-LPS-SRF, D.I. 4, Ex. B at iii)  Contrary to Plaintiffs' arguments, the subpoena is not limited to Gilbertson; it seeks information regarding "Defendants," a defined term in the subpoena that refers to "Ryan Gilbertson, RRG Family Capital LLC, Ryan Gilbertson Family 2012 Irrevocable Trust, Total Depth Foundations, Inc., and any of their past or present attorneys, representatives, agents, consultants, and any other persons acting, or purporting to act, on their behalf for any purpose."  (*Id.* at ii)

23.  In addition, the subpoena is in no way limited to Defendants' interests in entities with ties to NIS or the Purchased Equity.  Nor is it limited to a particular account, potential account, line of credit, or other transaction involving Sunrise Banks.  *See Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591–93 (D. Kan. 2003) (modifying a third-party subpoena to a financial institution limited to select accounts).  The only limitation to the scope of the subpoena is temporal: it seeks information from the "Relevant Period," which is defined as January 1, 2018 to the present.  (21-023-LPS-SRF, D.I. 4, Ex. B at iii)

24.  Therefore, the court finds that Plaintiffs' subpoena is an overbroad, general request for unlimited access to Defendants' financial information.  It is a fishing expedition for which Plaintiffs have presented no factual support, only conclusory arguments.  *See Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 92–93 (S.D.N.Y. 2002) (upholding an order quashing a subpoena for bank records by a Magistrate Judge after concluding that the request was "nothing more than a fishing expedition" where the requesting party "present[ed] no legitimate need for the . . . bank account information").  The subpoena for documents is

untethered to the allegations in the pleadings for breach of contract, fraud, concealment of liabilities, and failure to report off-market contracts in connection with the Equity Purchase Agreement.

**25.** Plaintiffs were instructed once before to narrowly tailor their requests to their causes of action and have failed to do so. (*See* 10/20/20 Tr. at 51:21–52:7)

**26. Conclusion.** The court finds that the scope of the subpoena for Defendants' financial records is overly broad and not "proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1); *Nat'l Union Fire*, 2018 WL 627378, at *4 ("If a subpoena falls outside the scope of permissible discovery, the Court has authority to quash or modify it upon a timely motion by the party served.") (citing Fed. R. Civ. P. 45(d)(3)). Therefore, Defendants' motion to quash Plaintiffs' subpoena to Sunrise Banks (21-023-LPS-SRF, D.I. 1) is granted without prejudice.

**27.** This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to four (4) pages each.

**28.** The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, www.ded.uscourts.gov.

_____
Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE